# CHARLESTON.

CRESAP *v.* CRESAP.

Submitted September 10, 1903—Decided March 9, 1904.

1. APPEAL—*Limitation—Judgment.*

   The date of a decree or judgment, as shown by the record, marks the point of time from which the statute of limitation governing an appeal from, or writ of error thereto, commences to run. (p. 584.)

2. WIDOW—*Executrix—Will.*

   Where a widow is executrix of the will of her late husband, and claims certain real estate under the will as a devisee therein, and also claims it as her individual property upon a resulting trust, as against her husband's estate, she may set up her individual claim to said property in a bill filed by her to construe the will, and settle the estate. (p. 586).

3. LACHES.

   *Laches* is inexcusable delay in asserting a right, and is an equitable defense, controlled by equitable considerations. To be a bar, the lapse of time must be so great, and the relation of the defendant to the right such that it would be inequitable to permit the plaintiff to assert it, where he has had, for a considerable period, knowledge of the existence, or might have acquainted himself with it, by the use of reasonable diligence. (p. 590).

4. SYLLABUS APPROVED.

   Point 1 in *Bierne* v. *Ray*, 49 W. Va. 129, and in *Sayre* v. *Harpold*, 33 W. Va. 553, approved and applied. (p. 590).

5. EVIDENCE—*Error.*

   Where exceptions to a part of an answer are sustained, and the defendant does not ask leave to amend his answer, it is not error to proceed to hear the case on the bill, and so much of the answer as is not expected to. (p. 595).

6. WIFE'S SEPARATE ESTATE.

   Where the husband buys land with the wife's money, and with her assent, but without her knowledge or consent, takes

the title to the property to himself, and such facts are establish-
ed by clear and satisfactory proof; and the transaction is free
from fraud against creditors, equity will treat the property as
her separate estate, and establish a' resulting trust in her favor,
good both as against the husband and his creditors.　(p. 596).

Appeal from Circuit Court, Randolph County.

Bill by Agnes C. Cresap against the Bank of West Virginia
and others.　Decree for plaintiff.　Certain defendants appeal.

*Affirmed.*

W. B. MAXWELL, for appellants.

SAM V. WOODS, for appellees.

MILLER, JUDGE:

Appellee, Nannie I. Brown, insists that this appeal should'
be dismissed, because, as she claims, the term of the court, at
which the decree appealed from was entered, commenced on the
21st day of January, 1901, and was continued from day to day
until the first day of February, 1901, when the said decree was
entered in the record.　The appeal was allowed on the 23rd
day of January, 1903, more than two years from the commence-
ment of the term at which said decree was pronounced.　In
*Dew* v. *Judges,* 3 Hen. & Munf. 27, the court says: "The term,
'session' when applied to courts, means the whole term and, in
legal construction, the whole term is construed as but one day,
and that day is always referred to the first day, or commence-
ment of the term."　In *Dunn's Exrs.* v. *Renick,* 40 W. Va. 349,
360, it is said: "By reason of this rule that the whole term is
one day, the common law rule was that a judgment rendered on
any day, has relation to, and is a judgment of, its first day."
Tidd. Prac. 547; 1 Lomax Dig. 287; 1 Black. Judg. section
441; 2 Freem. Judg. section 369; *Farley* v. *Lea,* 32 Am.
Dec. 680.　This doctrine or rule had always been recognized in
Virginia before we had a statute, but is now embodied in a
statute, *as regards the effect of the judgment as a lien.*　Code,
chapter 139, section 5; *Society* v. *Stanard,* 4 Munf. 539; *Coutts*
v. *Walker,* 2 Leigh 268; *Skipwith* v. *Cunningham,* 8 Leigh
272; *Withers* v. *Carter,* 4 Grat. 418.　The Court, in *Dunn's
Exrs.* v. *Renick, supra,* holds: "Though a decree or judgment

relate to the first day of a term, yet if the case was not ready
for hearing or trial, and therefore no judgment or decree could
have been given on such first day, it does not relate to the first
day, but has the date of its *actual entry* on the record." This
rule of law seems to be necessary, in order to give effect to the
proceedings of the courts. Without it, the administration of
justice might be thwarter in many cases by successive aliena-
tions of property, pending the suit, wherein the property is the
object of the litigation. All men are presumed to take notice
of the proceedings in courts of justice.

Section 3 of chapter 135 of the Code of 1899, provides that:
"No petition shall be presented for an appeal from, or writ of
error or *supersedeas* to, any judgment, decree or order, whether
the state be a party thereto or not, nor to any judgment of a
circuit court or municipal court rendered in an appeal from the
judgment of a justice, which shall have been rendered or made
more than two years before such petition is presented."

The petition for the appeal in this case describes the decree,
in part, as having been made on the first day of February, 1901;
but does not give the date of the commencement of the term
at which the decree was entered. It is probable that no peti-
tion for an appeal or writ of error can be found among the
records of this Court, which describes the decree or judgment
sought to be reviewed, by the date only, of the first day of the
term of the court, at which it was made and entered. It is be-
lieved to be the universal practice to state in the petition the
day on which the decree or judgment was made or entered, as
the date of such decree or judgment. Such seems to be the
construction placed upon the statute by the bar. No appeal
from a decree, or writ of error to a judgment can be allowed;
or correction thereof made under chapter 134 of the Code, un-
til the same be entered on the record of the court. Certainly
no execution can be issued thereon until the record thereof be
made and signed by the judge. The execution must follow the
judgment, and be supported by it. Freeman on Ex. 42; Herm.
on Ev. Vol. 1, section 42. It is a part, and continuation of the
record.

In order to stop the running of the statute of limitations, it
is necessary to present a petition in a case specified by the
statute, to the Supreme Court of Appeals, or to a judge thereof

in vacation, within a time limited by the statute. It is a sufficient compliance with the terms of the statute if the petition for an appeal or writ of error be presented within the time limited. . *Ambrouse's Heirs* v. *Keller*, 22 Grat. 769.

In *Hoy* v. *Hughes*, 27 W. Va. 778, 780, the Court cites *Buster* v. *Holland*, *Id.* 510, and holds that no appeal can be entertained from any decree of any character, whether final or interlocutory, which had been rendered more than two years before the petition for the appeal was presented. *Stout* v. *Philippi M. & M. Co.*, 41 W. Va. 339; *Tiernan's Admr.* v. *Minghini's Admr.*, 28 W. Va. 314. As to appeals to the Supreme Court of the United States, the Act of Congress provides that no judgment, decree or order of a circuit court or District Court, in any civil action at law or in equity, shall be reviewed in the Supreme Court on writ of error or appeal, unless the writ of error is brought, or the appeal taken within two years after the entry of such judgment, decree or order. Rev. Statutes, U. S. 1878, section 1008.

In the case of *Iron Co.* v. *Hoagland*, 105 U. S. 701, decided at its October term, 1881, under the statute above cited, the court held that, "the time within which a writ of error must be served in order that it may operate as a *supersedeas*, must be computed from the *date* of the judgment, which is the subject of review." In the case of *Cummings* v. *Jones*, 104 U. S. 419, decided at the same term, the court held that, "the judgment of a state court cannot be re-examined here unless within two years after it was rendered, a writ of error be brought." Barton's Law Pr. Vol. 1, 53, 57, cites several decisions of the Supreme Court of Appeals of Virginia, construing the statute of that state, relating to appeals and writs of error, which statute is somewhat similar to our own. In all of the decisions examined, the actual date of the decree or judgment, as shown by the record, marks the time from which the statute of limitations, governing the allowance of appeals from, and writs of error to, decrees and judgments, commences to run.

In the light of the adjudicated cases, we, therefore, hold that the date of the decree or judgment complained of, as shown by the record, is the point of time from which the statute of limitations governing an appeal from, or writ of error thereto, commenced to run. However, in computing the time within

which an appeal or writ of error be allowed, Code, chapter 13, section 12, must not be overlooked.

The appeal in this case was therefore allowed within the time prescribed by the statute, in such case made and provided.

Appellants, Gustavus J. Cresap, Rachel R. Murdock, (nee Cresap) and Mary B. Cresap insist that the main question, to-wit, the right and title to the "John Burkett property," situate in the town of Beverly, which was conveyed to C. J. P. Cresap by deed, dated June 2, 1871, attempted to be adjudicated and determined by the decree now complained of, made and entered by the said circuit court on the 1st day of February, 1901, was, at the date of said decree, *res judicata* by the decision of this Court, pronounced on the 6th day of December, 1890, in *Cresap* v. *Cresap,* 34 W. Va. 310.

This suit was originally brought by Agnes C. Cresap, widow and executrix of the last will and testament of Charles J. P. Cresap, deceased, referred to above as C. J. P. Cresap, against the divisees and creditors of said testator, to ascertain the several creditors of the decedent; the amount and priorities of their demands against the estate; to provide for the payment of said demands, when so ascertained; and to have a settlement of the accounts of plaintiff as such executrix.

The plaintiff afterwards filed an amended bill, in which she set up a claim individually, under the said will, to the title in fee simple of all the real estate and to the absolute ownership of all the personal property of which said testator died seized and possessed, subject only to the payment of his debts, and the lawful expenses of the administration of the estate. She prayed in her said amended bill that the said will be construed by the court, and that her rights, powers and duties, under the provisions thereof, be ascertained and declared, in order that she might administer the estate, according to the true intent and meaning of said will; and for general relief.

Said Gustavus J. Cresap, Mary B. Cresap, and Rachel R. Cresap—now Murdoch—named in said will as residuary legatees, filed their answer to said bill and amended bill, in which they deny the claim of the plaintiff to absolute ownership, under the will, of the estate devised and bequeathed by said will, subject only to the debts of the testator, and the law-

ful charges of the administration of the estate. They also prayed a construction of the will, a copy of which is made a part of the record. There was a general replication by the plaintiff to said answer.

"Upon this state of the pleading the circuit court, proceeding to construe said will, decreed that the plaintiff Agnes C. Cresap had under said will full power and authority to sell, convey, and transfer the said property, both real and personal, and that under said will she is the absolute owner of said personal estate, and the absolute owner in fee-simple of any real estate held by him in fee-simple, and as to any estate not held by him in fee-simple she, under said will, hath succeeded to all rights held hereto by him at the time of his death; and a commissioner was appointed to whom an order of reference had been made in the cause to ascertain the amount and priorities of the debts of said testator, and to settle the accounts of said testatrix, and was directed to proceed with said accounts." *Cresap* v. *Cresap,* 34 W. Va. 315, 316. This Court, in its opinion, delivered by ENGLISH, JUDGE, at pages 321, 322, says: "We must conclude that said testator authorized his wife to sell and convey his estate for convenience, so that in case she might see fit to sell any or all of his real estate conveyances might be made without trouble or expense, and to avoid the necessity of having the others who might be interested in the proceeds to join in such conveyances; and these sales were to be made, 'so far as she might see proper,' for two purposes—First, for her support, according to her condition in life; and, second, for the benefit of his estate. The will then proceeds to point out the objects of such trusts, as follows: At the death of his wife, and after she has enjoyed a support according to her condition in life out of his estate, he desired one fourth of the remainder to be disposed of by her, one half of said residue to be divided equally between his brother Gustavus J. Cresap and his sisters, Mary B. Cresap and Rachel B. Cresap, and his niece Nannie I. Evans, to have the remaining fourth; and in the event his said wife did not dispose of said one fourth, then the said fourth was to be divided between his brother Gustavus J. Cresap and any unmarried sister or sisters at her death. As to the fourth of said residue, which he directed his wife to dispose of, he clearly intended to give her the power to deed or will it to whom she

might see proper, and this fourth she derived as a beneficiary under said trust declared in the first part of the instrument, and in the event that she does not dispose of it he directs how it shall be distributed." And on page 325, it is further stated: "Looking to the entire will, I think the construction hereinbefore indicated is the proper one, and the decree complained of must be reversed, and the case remanded to the circuit court of Randolph, county for further proceedings to be had therein."

Afterwards, on the 15th day of October, 1892, the said Agnes C. Cresap, in her own right, and as executrix of the last will and testament of said Charles J. P. Cresap, deceased, filed in said cause, her amended and supplemental bill, against the said devisees and creditors of the decedent, in which she among other things, alleged that she was married to said Charles J. P. Cresap on the 25th day of January, 1870; that at the time of her said marriage, she was possessed of personal estate, consisting of money, bonds, notes, &c., well secured, amounting to about $4,000.00, all of which was collected for her, and was entrusted by her as the same was collected, to the custody and care of her husband, without any other right thereto, or interest therein in him, than that of her trusted agent for the care and management thereof, for her use; that at the time of their marriage, her husband was a young lawyer, just commencing the practice of his profession at Beverly in Randolph county, and was possessed of not more than $500.00 worth of property; that, not long after their marriage, she authorized her husband to purchase for them a home in Beverly from John Burkett, to be paid for out of her separate estate; that, in pursuance of this authority, her husband, on the 2nd day of June, 1871, did purchase of said Burkett the said property for $2,500.00, all of which was paid out of her said separate property by her husband, for her use; that no part of said sum was paid by him out of his estate; that she did not, at any time, to any extent or in any manner, assign or transfer to him any part of said property or any interest therein, save only that he occupied and used the same with her, as a home and dwelling place, during his life time, and that she has used it, herself, as such home since his death; that she did not, at any time, give, transfer or set over to her husband any part of, or interest in, her money, which was paid for said property; that her hus-

band, without her knowledge or consent, procured said Burkett
and his wife, to convey the legal title to said property to him-
self; that she had unlimited confidence in the good faith of her
husband in the transaction, and believed that the property had
been conveyed to her; that she remained in perfect ignorance
of the fact, that it had not been so conveyed for some time
thereafter; that when she learned that the conveyance had been
taken by her husband to himself, she complained to him, about
it; that afterwards, her husband repeatedly assured her that
he would convey said property to her, which he never did; that
he made and published his will, on the 29th day of July, 1871,
the existence and contents of which plaintiff well knew, in
which he devised to plaintiff the whole of his estate, which will,
he carefully kept in his safe until the time of his death; that
after her husband's death, which took place on the 6th day of
August, 1886, it was discovered that, on the 15th day of May,
1884, he had made a second will, revoking his said former will,
the last will being the one in question, but which, as plaintiff
was advised, by counsel, learned in the law, had the legal ef-
fect to vest in her an estate in fee simple in all of the real
estate, and an absolute ownership of all the personal property
of the decedent. She then sets out the proceedings, decrees
and orders, had and made upon the original and first amended
bill up to, and including, the decision of this Court, *supra,* and
says that, by reason of the aforesaid wills and proceedings in
the circuit court, she had before the filing of her amended and
supplemental bill, made no claim against her said husband's
estate, either for the said property so purchased from Burkett,
or for her money invested therein. She then prays that the
said Burkett property be decreed to her as her separate estate,
and conveyed to her as such; or, if that cannot be done, that
the sum of $2,500.00, the amount of her money used by said
testator in the purchase of said property, with interest on said
sum from the 2nd day of June, 1871, be decreed to her, out of
the assets of the said estate.

After filing her said amended and supplemental bill as afore-
said, said Agnes C. Cresap, departed this life testate, and by her
last will and testament, which bears date on the 5th day of
March, 1900, and which was probated on the 18th day of April,
1900, she "willed and bequeathed" to her niece, the said Nannie

I. Brown, all of her real and personal estate of every kind and character.

On the 3rd day of May, 1900, the death of plaintiff, Agnes C. Cresap, was suggested on the record, whereupon the cause was revived and ordered to proceed in the name of Leland Kittle, as administrator *de bonis non,* with the will annexed of said C. J. P. Cresap, deceased; and at the same time, upon motion of said Nannie I. Brown, the said cause was revived in her name, as administratrix with the will annexed of said Agnes C. Cresap, deceased. It will be remembered that said Brown was, from the commencement of the suit, a defendant therein. At the January term of the court, 1901, said Brown filed another answer, alleging that she is the sole devisee of the late Agnes C. Cresap, who departed this life, testate, on the ———— day of March, 1900. She makes the said will a part of her answer. No person is named in the will as executor thereof.

At the said January term, 1901, said Gustavus J. Cresap, Mary B. Cresap and Rachel R. Murdoch, filed their amended and supplemental answer in said cause, and with many other averments, say that, to the said amended and supplemental bill, filed by said Agnes C. Cresap, in her own right as executrix as aforesaid, they had theretofore appeared and demurred, which demurrer had not then been passed upon by the court; that the grounds of demurrer had been verbally stated by counsel, and that they now state such grounds to be:

"1st. Said Agnes C. Cresap in her own right seeks to set up claims to property which are in direct conflict with her claim to the property in her fiduciary capacity. .

"2d. Said Agnes C. Cresap by her said last bill seeks to assert the title to property by an alleged resulting trust in favor of herself contrary to the averments of her original and first amended bill and is for that reason chargeable with the departure in her pleading.

"3rd. By her said last mentioned amended and supplemental bill said Agnes C. Cresap admits that her late husband took title to said real estate on the 2nd day of June, 1871, and while she does not definitely inform the court as to when she first knew that her husband had taken the title to this land in his own name yet by her said bill she does not inform the court that he made and published his last will and testament on the

29th of July, 1871, or less than sixty days after he had taken title to the property of which will and its contents she had full notice and knowledge so that she certainly had knowledge as to how the title stood not later than July 29th 1871, and yet did not, prior to his death, in August, 1886, do anything to assert her title, and thereafter for more than six years and until the October term, 1892, of this court she claimed under said will and respondents now insist that whatever rights said Agnes C. Cresap in her own right may have ever had are long since barred by the statute of limitations, and she and her devisee are barred by her *laches* from now asserting any title to said land or setting up any debt against the estate of said Charles J. P. Cresap, deceased."

The said demurrer was, by the court, overruled, and of this ruling of the court, appellants complain. The questions raised by the demurrer will be first considered and disposed of in the order as stated therein.

Appellants contend, but not very strenuously, that plaintiff should not be allowed to assert as plaintiff in the same suit, one claim in her own right and another in her fiduciary character. In *Sadler* v. *Taylor,* 49 W. Va. 104, it is held that in equity it is generally sufficient, if all the parties interested in the subject matter of the suit are before the court, either as plaintiffs or defendants. Story's Eq. Jur. 630; *Piatt* v. *Oliver,* 3 McLeans' Rep. U. S. 27; *McArthur* v. *Scott,* 113 U. S. 386; Hogg's Eq. Proc. Vol. 1, section 84; *Spooner* v. *Hilkirk,* 92 Va. 340. If one person holding a fiduciary, and another person having a personal interest, may be joined as plaintiffs, certainly the same person, claiming interests in both capacities, may, as plaintiff, in equity, join such claims in his bill.

Plaintiff's amended and supplemented bill is not such a departure in the pleading in said cause as renders it demurrable. *Cresap* v. *Cresap, supra*; Hogg's Eq. Procd. Vol. 1, sections 325, 326, 327; *Burlew* v. *Quarrier,* 16 W. V. 108; *Bird* v. *Stout,* 40 W. Va. 43; *Belton* v. *Apperson et al.,* 26 Grat. 207.

It is also contended by appellants that their demurrer should have been sustained by the court by reason of the *laches* of the plaintiff, Agnes C. Cresap, in asserting her alleged right. *Laches* is *inexcusable delay,* in asserting a right, and is an equitable defense, determinable by the particular facts. It is

further insisted that plaintiff had knowledge of all the facts pertaining to the title of the Burkett property, in a short time after the deed therefor, was made by Burkett and wife, to her husband, because he made his first alleged will on the 29th day of July, 1871.

In *Halstead* v. *Grinnan,* 152 U. S. 412, in discussing the *laches* which may be successfully interposed as a bar to the enforcement of an alleged right, it is held, that, *laches* is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relation of the defendant to the rights, such, that it would be inequitable to permit the plaintiff to assert them, where he has had for a considerable period, knowledge of their existence, or might have acquainted himself with them by the use of reasonable diligence." We think the plaintiff has satisfactorily explained her delay by filing her amended and supplemental bill, if the allegations thereof be true, as they are taken to be, on appellants' demurrer thereto. The said demurrer was, therefore, properly overruled.

Upon the pleadings in the case, at the time of the decision therein by this Court, there could not have been an adjudication on the merits of plaintiff's claim to the Burkett property as alleged in her said amended and supplemental bill. That contention of appellants is not well founded.

On the first day of February, 1901, the decree appealed from was made and entered. It recites that the cause came on again to be heard upon the papers theretofore read and decrees therein; the answer of Nannie I. Brown, tendered in court and filed, exhibiting therewith a copy of the will of Agnes C. Cresap, deceased, with general replications thereto, (and upon her motion, and by consent of parties, the cause was revived in her name and individual right as sole devisee of Agnes C. Cresap, deceased, as well as in her fiduciary character as theretofore ordered; and the death of Samuel Woods, having been also suggested, by like consent, the said cause was also revived and ordered to proceed in the names of, and against, J. Hop Woods and Samuel V. Woods, as administrators with the will annexed, of said Samuel Woods, deceased;) upon the said supplemental bill of Agnes C. Cresap, filed in the cause at the October term, 1892, upon the written grounds of demurrer thereto interposed by appellants as aforesaid; upon the joint answer to the bill

and amended bill, and upon the exceptions to the first of said answers, filed at the May term, 1894, on the ground that said answer is not verified by respondents, and is not responsive to the allegations of the amended and supplemental bill; and upon the exceptions to their second joint answer, filed on the 25th day of January, 1901, in so far as the same purports to be an answer to said supplemental bill, because said last mentioned answer fails to controvert any material allegations in said amended and supplemental bill. The said exceptions to said answers were made thereto, and endorsed thereon by said Nannie I. Brown, during the said January term, 1901, of the court. The general replications to said answers filed by plaintiff were withdrawn for the purpose of allowing said exceptions to be made. Thereupon said demurrer to the amended and supplemental bill was overruled; the exceptions aforesaid to said answers, and each of them, were sustained for the reasons, and to the extent as endorsed thereon, and the general replications to said answers were modified accordingly. The decree further recites that it appearing to the court from the report of Commissioner J. B. Ward, supported by the depositions of Nehemiah Carper, Geo. W. K. Yokum, James H. Logan and Adam C. Rowan, and from the allegations of said amended and supplemental bills, taken for confessed, that the dwelling house and lots, occupied by C. J. P. Cresap, at the time of his death, and purchased by him on the 2nd day of June, 1871, from John Burkett, by deed of that date exhibited with the bill, were purchased by C. J. P. Cresap, at the price of $2,500.00, and paid for out of the separate estate of said Agnes C. Cresap, deceased, and that the title thereto was improperly vested in him", the court is of opinion and doth accordingly adjudge, order and decree that the title to said Burkett property was vested in said C. J. P. Cresap in trust for Agnes C. Cresap, who was entitled at the time of her death to be vested with the title to the same." The decree then appoints J. F. Strader a special commissioner, and directs him to convey said property to said Brown, as sole devisee of Agnes C. Cresap, deceased. The decree also overrules certain exceptions to the report of said commissioner Ward, filed on the 23rd day of April, 1894, and confirms said report, in so far as the same had not been confirmed by the decree of said court, entered at its May term, 1894.

Upon the question of *res judicata* relied on by appellants, *Biern* v. *Ray,* 49 W. Va. 129, is cited by them. In that case, JUDGE POFFENBARGER reviews, not only our own decisions, but many others, bearing upon that doctrine, and refers to *Sayre* v. *Harpold,* 33 W. Va. 553, in which it is held that "An adjudication by a court having jurisdiction of the subject matter and the parties is final and conclusive, not only as to matters actually determined, but as to every other matter which the parties might have litigated and incident thereto, and coming within the legitimate purview of the subject matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits." It is scarcely necessary to say that the case, until the plaintiff filed her amended and suplemental bill, was not such by the pleadings, that the parties might have had the question of title to, and ownership of, the Burkett property, by reason of the payment of the whole of the purchase money therefor, out of the money and means of the plaintiff, determined and adjudicated between the parties on its merits. Prior to the filing of her amended and supplemental bill, the plaintiff claimed and relied for title to, and ownership of, the property on her husband's will, which, she was advised by counsel, did confer such title and ownership upon her. The circuit court so held, and until this Court decided otherwise, she was excusable for not asserting her alleged right to the property as now claimed by her.

Appellants insist that, inasmuch as the court, at its May term, 1894, permitted them to file their original answer to plaintiff's amended and supplemental bill, to which answer the plaintiff, at that term, replied generally, and also allowed them to file their amended answer at its January term, 1901, to which there was also a general replication, the court should not, at the hearing, have permitted a co-defendant to except to said answers, and should not have rejected said answers, as in said decree recited; that said answers should be treated as yet in the cause; and that appellants are entitled to the relief sought thereby. As a general rule, one defendant cannot except to the answer of his co-defendant to the plaintiff's bill. This rule may be different where relief is sought by one defendant against another. It will, however, be borne in mind that Nannie I. Brown succeeded to all

of the property rights of Agnes C. Cresap, the original plaintiff in the cause, by virtue of the will, and her appointment as executrix with the said will annexed of Agnes C. Cresap, deceased. The cause was revived in her name as plaintiff in her respective rights, as an individual, and as fiduciary, as aforesaid. At the same time, (January term, 1901), she excepted to said answers. The answers and each of them are insufficient in the particulars pointed out by the exceptions. Therefore, the action of the circuit court, in sustaining the said exceptions, was not erroneous, unless it be so, for some other reason. Nannie I. Brown, having become plaintiff, she was entitled to make the exceptions, unless that right had, in some way, been waived by her predecessor plaintiff. She had not the legal status to make the exception until the January term, 1901, and the amended answer of appellants was not filed until that term. The record, as to it, was then made up for the first time. Said last mentioned answer was tendered and filed; exceptions were endorsed thereon, which were sustained; a general replication thereto, as modified by the exceptions sustained as aforesaid, was entered; and a final decree was then made thereon.

This Court, in *Hartman* v. *Evans,* 38 W. Va. 669, held that, "When a replication to the answer is entered or filed, the exceptions to the answer are treated as abandoned, and the answer deemed sufficient *as to any discovery prayed for."*

The Code, chapter 125, section 54, provides that, "When a plaintiff in equity files an exception to an answer, the exception shall at once be set up for argument." The necessity for this rule is very apparent.

In *Arnold, Abney & Co.* v. *Slaughter,* 36 W. Va. 589 596, it is said: "The object of exceptions is to direct the attention of the Court to the points excepted to, and to take its opinion thereon, before further proceedings are had, to the end that, if the answer is insufficient, a better answer may be *compelled,* or if scandalous or impertinent, that the scandalous or impertinent matter may be expunged."

Daniel's Ch. Pl. & Pr. Vol 1, section 766, says: "No exceptions can be taken to any answer for insufficiency, after replication; but in some cases, however, the court has on special application, permitted the replication to be withdrawn, and exceptions to be then filed." In *McKell* v. *Collins Colliery Co.,* 46

W. Va. 625, the defendant, at the May rules, 1897, filed his answer to the bill. From that time until September 28, 1897, both plaintiffs and defendant took depositions to sustain their respective pleadings and the cause was thus fully prepared for hearing on its merits. The answer was excepted to by plaintiffs for insufficiency on the last mentioned day. This Court held: "In such case the plaintiff will be held to have waived his right to except to such answer for want of proper filing and attestation, and the cause comes within the purview of section 4, chapter 134, Code."

Recurring to said original answer filed by appellants at the May term, 1894, we find that it is not verified by affidavit of any kind, the amended and supplemental bill to which it is filed, being properly sworn to. The said answer makes no direct denial of the material allegations of said amended and supplemental bill. No depositions appear to have been taken in the cause after said original answer was filed, by either party. In fact no evidence was at any time taken by the defendants to support their contentions contained in their said answers. The action of the court in sustaining the exceptions to said answers does not appear to have prejudiced the defendants. The court, upon the facts and circumstances of the case, did not err in sustaining the exceptions to each of said answers.

Should the court have then given the defendants leave to file additional or amended answers? The plaintiff did not ask for further answer or discovery from the defendants. Daniels, *supra,* section 775, says: "If the exceptions are allowed, the court will, at the *request* of the parties, at the time of giving its decision, appoint a time within which the defendant is to put in his further answer." In *Chapman* v. *Railway Co., 26 W. Va.* 300, an exception to a part of the answer was sustained by the Court, and the cause then heard upon the bill, and answer without an opportunity given to the defendant to amend its answer. The Court held: "Where exceptions to a part of the answer, are sustained, and the defendant does not ask leave to amend his answer, it is not error to proceed to hear the case on the bill, and so much of the answer as is not expected to." In this case, the defedants did not ask leave to file an additional or second amended answer. It must be presumed that they did not desire to do so.

They cannot be heard to complain of the action of the court, in proceeding to hear the cause, without further denial to, or delay of the plaintiff.

The evidence in the case is clear, full and satisfactory that the Burkett property was paid for with the money and means of Agnes C. Cresap. The circumstances of the case, and the acts and admissions of C. J. P. Cresap rebut any presumption that Agnes C. Cresap intended, either the purchase money therefor, or the property, as a gift to her husband.

Perry on Trusts, section 127, says: "If a husband purchase lands with the separate estate of his wife, in his hands, or with the proceeds or accumulations from it, or money put into his hands to invest for his wife, and take the title in his own name, a trust results to the wife." See cases cited in note 1, *Idem; Smith* v. *Turley,* 32 W. Va. 14; Beach Mod. Eq. Jur. Vol 1, section 183; *Berry* v. *Wildman et al.,* 40 W. V. 36.

It is also urged that the heirs and devisees of Judge Samuel Woods, deceased, should have been made parties to the suit. It nowhere appears that said Woods, deceased, was ever in any way interested in the Burkett property. J. Hop Woods and Samuel V. Woods, administrators with the will annexed of said Samuel Woods, were made parties before the final hearing. What their powers and duties are, under the will of their testator, do not appear. It is presumed their authority is ample for the purposes of the suit.

We find no reversible error in the record. The decree complained of must, therefore, be affirmed and the cause remanded to the circuit court of Randolph county for such further proceedings to be there had therein, as may be necessary and proper.

*Affirmed.*

Note by BRANNON, JUDGE:

I wish to say that I am not clear, that our decision conforms exactly to dry law in excusing Mrs. Cresap from *laches* from ignorance of the legal construction of the will, and in holding that the amended and supplemented bill was no departure from the original bill. But as to *laches,* the Court has wide range to do equity according to the facts of each case, and the claim of Mrs. Cresap is so just, and her excuse for delay so strong, that I con-

cur under this head. As to departure, the objection is technical, not going to the merits of the case. Why may we not treat the amended and supplemental bill as an original bill to accomplish justice?