---

# CHARLESTON.

WHITTEN *v.* WHITTEN *et als.*

Submitted March 14, 1911.   Decided February 27, 1912.

TRUSTS—*Resulting Trusts—Presumptions.*

 Money of a wife invested in land in the husband's name is presumptively a gift, and, in the absence of facts and circumstances rebutting the presumption, such as violation of a prior or contemporaneous agreement to take the title in the wife's name, ignorance of its having been taken in the husband's name, subsequent expenditure of the wife's money in improvements thereon, an effort on her part to obtain the title after discovery

of its condition, control of the property as her own against the husband, or the like, there is no resulting trust in her favor.

(BRANNON, PRESIDENT, absent.)

Appeal from Circuit Court, Monroe County.

Bill in equity by L. A. Whitten against Thomas G. Whitten and others. From a decree for defendants, plaintiff appeals.

*Reversed and Remanded.*

*J. H. Crosier* and *R. L. Clark,* for appellant.

*Rowan & Meadows,* for appellees Stull.

POFFENBARGER, JUDGE:

Sufficiency of the evidence to establish a resulting trust in favor of the devisees of a deceased widow against the heirs of the deceased husband is challenged by this appeal from a decree in a partition suit in favor of the former.

At the time of his death, in 1890, John G. Whitten held the legal title to a tract of land, containing 57 acres, on which he resided, and a small adjacent tract. In 1882, a commissioner of the circuit court of Monroe county conveyed to him and Thos. G. Whitten, his brother, as assignees of H. M. Lockridge, a purchaser at a judicial sale, a tract of 159 acres and 32 poles, out of which the latter, under a voluntary partition, conveyed to the former the 57 acre tract. In 1886, the other small tract was conveyed to John G. He died in 1890, leaving his wife, Sally A., surviving, who resided on the 57 acre tract until her death, in 1907, leaving a will, bequeathing and devising all of her property, "both personal and real" to Geo. Stull and Cora M. Stull, his wife, subject to the payment of her debts. This suit was brought by a collateral heir of John G. Whitten, his brother, L. A. Whitten, against numerous other heirs for partition of the land, and the Stulls were made parties to it on their petition, claiming title to all of it by virtue of the will, upon the theory of equitable title in the testatrix by reason of alleged payment of all the purchase money out of money belonging to her, and the court upheld and enforced their claim as to the 57 acres, by the decree appealed from.

Three witnesses swear the deceased husband had admitted payment for the land with his wife's money and her title to it,

and his duty to convey it to her. Two of them say $250.00 of the purchase money came from her father's estate, one of whom further says he was present when Shannon Baker, her brother, paid it either to John G. Whitten or Lockridge. Another says he married into the family and knows the purchase money came from her father's estate, but details no dates, amounts or circumstances. Two of them mention an additional sum of $35.00 put in on the original transaction with the $250.00, which she had saved from the proceeds of sales of farm products. By way of rebuttal, two witnesses say John Baker, the wife's father, died only ten years before the date of their testimony, fifteen years or more after the date of the first purchase. Four witnesses testify to the wife's admissions of title in the husband's heirs and her inability to sell or dispose of the land or obtain more than the use of it during her life, but not to any denial of payment of purchase money out of her funds, or admission of payment otherwise. As to the total amount of purchase money, there is no evidence, but the petition, treated as a cross-bill, contains an undenied allegation that it was $400.00, which, under the rule, is taken as true.

Failing to observe the effect of the relation of husband and wife upon the transaction, relied upon as having vested equitable title in Mrs. Whitten, the decree seems to treat it as one between strangers, in which proof of payment of money alone establishes a resulting trust in favor of him who paid the money, the legal title having been conveyed to another. The marital relation of the parties introduces an exception, not always mentioned, however, in dealing with cases in which it is a factor. The rule as stated in *Skaggs* v. *Mann,* 46 W. Va. 209, is somewhat broader than the authority cited for it, (*Berry* v. *Wideman,* 40 W. Va. 36), which, though placing the burden upon the husband to prove the money invested was a gift, says the fact is *"prima facie* established by proof of her knowledge and consent." This qualification is unnoticed in the quotation of the rule in *Skaggs* v. *Mann. Cresap* v. *Cresap,* 54 W. Va. 581, observe it. *Deck* v. *Tabler,* 41 W. Va. 332, *McClintock* v. *Loiseau,* 30 W. Va. 865, and *Lockhard* v. *Beckley,* 10 W. Va. 87, go further, declaring a presumption of gift without proof of knowledge and consent on the part of the wife whose money has been

so invested in the name of the husband which must be rebutted by proof of her ignorance of the fact or her objection to the form of the conveyance or some other fact inconsistent with the presumption. This subject is more thoroughly considered in *McGinnis* v. *Curry,* 13 W. Va. 29, than in any other of our decisions. There the deed was taken in the husband's name with the approbation of the wife, but Judge GREEN clearly expresses the opinion that the result ought to have been the same in the absence of proof of that fact. In other words, he thought the burden was upon the wife to negative the presumption of a gift. We read: "It is equally well settled, that such a resulting trust will not arise, where the party, who advanced the purchase money, bears certain close relations to the party, in whose name the deed is taken. If a father advances the purchase money, for instance, and the deed is taken in the name of a wife or child. *Shaw et al.* v. *Read,* 47 Penn. 96. So too, if a grandparent advances the purchase money, and the deed be taken in the name of a grandchild, even though the father be not dead, the presumption would be, that it was intended as a gift, and no remitting trust would arise. This is a legitimate inference from the English cases. See *Ebrun* v. *Duncer,* 2 Ch. Ca. 26; *Lloyd* v. *Read,* 1 Wms. 607; *Kilpin* v. *Kilpin,* Moo. & R. 520. In these and other instances, in which the law presumes, that the person advancing the money intended it as a gift to the person in whose name the deed is made, this presumption is one of fact and not of law, and may be rebutted by evidence or circumstances. The presumption, that the advancement of the purchase money was intended as a gift, is not confined to the case, where the person making the advancement was under legal obligations to support the other party. A grandparent is under no such obliagtion to support a grandchild, especially when its father is living; and yet the more recent English cases, above cited, assume, that a gift would be presumed in such a case, where a deed is taken in the name of the grandchild, and the purchase money advanced by the grandparent." The following from Schouler's Dom. Rel., sec. 119, agrees with this view: "So, too, land or other property bought by the husband with his wife's money, but in his own name, and without any agreement that the purchase shall be to her separate use, or the title taken

in her name, will not, as a rule, as presumptions have ruled hitherto, be treated as her separate property." Well's Separate Property of Married Women, sec. 212, conforms, saying: "Something depends on the form of the conveyance, and more still probably on the intent of the transaction. Where her money pays for the land, and the deed is taken in the name of the husband and wife jointly, and their heirs and assigns, and there is no evidence of an intention on her part to create a trust, the legal inference is that she thereby conferred an interest on her husband, such as the deed expresses; and no trust by operation of law will arise for herself or her heirs." So does Bishop's Law of Married Women, sec. 118, quoting the following with approval: "The authorities simply show that the same facts which would raise a resulting trust as between strangers, do not necessarily do so as between parent and child, or husband and wife; the presumption in such cases being, until rebutted, that an advancement or provision was intended, but this presumption being liable to rebuttal. There is, therefore, no uniform and unbending rule. The question resolves itself into one of intent; and each case, subject to those general *prima facie* presumptions, must depend upon its individual facts."

However the rule may have been stated from time to time, the fact is that in every case in which this Court has upheld and enforced a claim to a resulting trust in favor of a wife as against the heirs of her husband, she has clearly rebutted the presumption of a gift. In *Skaggs* v. *Mann,* a prior or contemporaneous agreement to take the deed in the wife's name and her ignorance of the breach of that agreement were shown. In *Berry* v. *Wiedman,* the chief value of the property was in the improvements made by the wife at her own cost, subsequent to the purchase of the land. Her uniform claim of ownership and recognized control of the property, during her husband's life, were also shown. In *Cresap* v. *Cresap,* the allegations treated as sufficient on demurrer were substantially that the property had been conveyed to the husband without the knowledge or consent of the wife and that, on discovery of the fact, she had repeatedly demanded a conveyance to her, which was promised, but never executed. An equally strong case on the facts was shown in *Standard Mercantile Co.* v. *Ellis,* 48 W. Va. 309. We quote:

"The proof appears to plainly establish that the property was paid for with the wife's money, and was to be deeded to her, but that the title bond, without her knowledge or consent and apparently without his knowledge, was taken in his name. When she discovered this she sent the title bond by her son to have a deed for the property made to herself." This conduct of the wife clearly negatived the presumption.

The presumption of a gift under such circumstances accords with general legal principles. Ordinarily services rendered by one of two persons, standing in close relationship by blood or marriage, to the other is in law gratuitous, unless an express agreement to compensate, or facts from which it arises by inference, is shown. In the absence of a contrary agreement, express or shown by circumstances importing it, property passing from one of such persons to the other is ordinarily deemed a gift. Money of the husband invested in the name of the wife is always *prima facie* a gift. Why should not the money of a wife invested in the name of the husband be so regarded? By the weight of authority, here as elsewhere, it is, as we have shown.

Proof of Mrs. Whitten's ignorance of the character of the conveyance and of violation of any prior or contemporaneous agreement is wholly lacking. She furnished only a part of the money. Knowing the title was in her husband's name before his death, she made no demand for it and died leaving it in his heirs, and her will makes no specific reference to it. Moreover, she died believing she had no title to it. There is no proof of any improvements of the property at her expense. So the facts and circumstances, considered as a whole, confirm rather than repel the natural presumption of a gift.

Record title in the heirs ought to be overcome by clear and explicit evidence, if at all. *Prima facie,* they are the owners of the property. Ordinarily written evidence of title to land is required. Title resting on oral evidence is recognized in a few instances, but, in all such cases, clear and full proof is required. *Smith* v. *Turley,* 32 W. Va. 14. In neither character nor quantity does the evidence here measure up to this requirement.

Our conclusion is to reverse the decree, dismiss the petition of George Stull and Cora M. Stull, treated as a cross bill, and remand the cause for further proceedings.

*Reversed and Remanded.*